UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WALTER ADELMAN,                                          MEMORANDUM & ORDER
                                                                            08 CV 3609 (RJD)
                          Petitioner,

                          -against-

ROBERT ERCOLE, Superintendent of
Green Haven Correctional Facility

                          Respondent.
----------------------------------------------------------X

DEARIE, Chief Judge.

Pro se petitioner Walter Adelman seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his application is denied, and the petition is dismissed.

## BACKGROUND

Petitioner was convicted of burglarizing the Staten Island home of Steven and Joan Weistreich on January 31, 2002. During trial, Joan Weistreich explained that she and her adult daughter came home from work that morning to find the door to their home open and the handle and lock to the door on the floor. Weistreich went inside, but after hearing noises coming from the second floor, she realized that her home was being burglarized and she ran out of the house. She testified that she got a "good look" at the burglar, a heavyset white male, as he ran down the stairs inside her home and fled. Weistreich immediately called 911 and told the operator that the burglar was wearing a black hooded sweatshirt and gray sweatpants. She also noticed that he was carrying one of her pillowcases. Weistreich chased the burglar for a few blocks but eventually gave up so that she could pick up her possessions that the burglar had dropped as he fled. Weistreich identified petitioner as the burglar at a showup later that morning. She also identified petitioner as the burglar at trial.

James Sannino, the Weistreichs' neighbor, also testified at trial. He was reading the morning paper when he heard Joan Weistreich yelling at "a big man." Sannino ran outside, and after being informed by the Weistreichs' daughter that the man had just robbed their home, joined Joan Weistreich in chasing after him. Sannino eventually caught the burglar and, after a brief struggle, subdued him until the police arrived. While he waited for the police, Sannino removed a screwdriver from the burglar's pocket. Weistreich had previously identified the screwdriver as being part of a tool set she kept in her bedroom. Sannino identified petitioner as the man he chased from the Weistreichs' home and apprehended, and whom he turned over to the police.[1]

Petitioner was convicted, after a jury trial, of second-degree burglary. Because petitioner had two prior felony convictions for first-degree robbery, the trial judge sentenced him as a persistent violent felony offender to an indeterminate term of 18 years to life pursuant to New York Penal Law § 70.08. Petitioner's conviction and sentence were affirmed by the Appellate Division, People v. Adelman, 36 A.D.3d 926 (2d Dept. 2007), and leave to appeal to the New York Court of Appeals was denied, 9 N.Y.3d 872 (2007). This action followed.

## DISCUSSION

Petitioner advances three claims in his petition for habeas relief. First, he claims that the trial judge erred in permitting Joan Weistreich's in-court identification. Second, he claims that the trial judge erred in sentencing him as a persistent violent felony offender. Finally, he claims that he received ineffective assistance of trial counsel. None of his claims has merit.

---

[1] The Weistreichs' daughter also identified petitioner as the burglar at trial.

I.   In-court Identification

Prior to trial, the trial judge conducted a Wade hearing to consider the admissibility of Joan Weistreich's in-court identification. He concluded that the showup was procedurally defective and suppressed Weistreich's showup identification of petitioner.[2] He concluded, however, that the prosecution had set forth sufficient evidence to establish that Weistreich's in-court identification was not tainted by the improper showup and he denied petitioner's motion to suppress her in-court identification.

Petitioner argues, as he did on direct appeal, that the trial judge erred in permitting Weistreich's in-court identification. The Appellate Division rejected this argument on the merits, finding that Weistreich's in-court identification was "based on [Weistreich's] independent observation of [petitioner]" and "reliable under the totality of the circumstances." On habeas review, where the state court has already adjudicated a petitioner's claim on the merits, a federal court is limited to determining whether the state court's ruling (i) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (ii) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d). In addition, the Court grants considerable deference to the factual findings of the state court. See Tavarez v. New York, 2008 WL 2775810, at *4 (S.D.N.Y. July 14, 2008) (citing Uttecht v. Brown, 555 U.S. 1, 9-10 (2007)). Unless petitioner proves otherwise by clear and convincing evidence, the Court must presume that the state court's factual findings are correct. Id. at *5 (citing 28 U.S.C. § 2254(e)(1)).

---

[2] The trial judge concluded that the showup process was defective because petitioner was handcuffed and accompanied by six to eight uniformed police officers, and the police told Weistreich that they "got the perp" immediately before they displayed petitioner.

3

It is well established that "[d]espite the impermissibly suggestive nature of [a showup]," the admission of an in-court identification is proper if the court finds that the in-court identification was independently reliable. Frazier v. New York, 187 F. Supp. 2d 102, 111 (S.D.N.Y. 2002). Factors to be considered in determining whether the identification is independently reliable include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Id. at 111 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)). "These factors must be assessed in light of the 'corrupting effect of the suggestive lineup itself.'" Id. (quoting Manson v. Braithwaite, 432 U.S. 98, 114 (1977)).

Weistreich testified that it was sunny and clear the morning of the burglary, and that she "got a good look" at petitioner's face as he ran down the stairs from her home, out the door, and across her property. She told the 911 operator that the burglar was a heavyset male wearing a black hooded sweatshirt and gray sweatpants, exactly what petitioner, who is 6'3" tall and weighs 300 pounds, was wearing at the time of his arrest. She did not hesitate when identifying petitioner as the burglar at trial; nor did she hesitate when identifying him at the showup. Based on these circumstances, the Court cannot say that the state court's conclusion that Weistreich's in-court identification of petitioner was independently reliable was contrary to or an unreasonable application of Manson.

II.   Persistent Violent Felony Offender

Petitioner advances several arguments for habeas relief that are all predicated on his contention that the trial judge erred in sentencing him as a persistent violent felony offender pursuant to New York Penal Law § 70.08. None of petitioner's arguments has merit.

4

*A. Petitioner's 1988 Conviction*

Section 70.08 mandates an enhanced prison sentence for persistent violent felony offenders. Under § 70.08(1)(a), a persistent violent felony offender is defined as:

> a person who stands convicted of a violent felony offense [including Burglary in the Second Degree] . . . after having previously been subjected to two or more predicate violent felony convictions.

In 1981, petitioner pled guilty to first-degree robbery. In 1988, he again pled guilty to first-degree robbery. The trial judge concluded that these two prior felony convictions formed the requisite predicate violent felony convictions under § 70.08, and sentenced petitioner as a persistent violent felony offender to a prison term of 18 years to life.[3]

Petitioner does not contest that he pled guilty to a violent felony offense in 1981 and then again in 1988. Rather, petitioner argues, as he did on direct appeal, that the guilty plea forming the basis for his 1988 conviction for first-degree robbery was not made voluntarily and intelligently, and that it was therefore improper for the trial judge to rely on it as one of the two predicate prior violent felony convictions in sentencing him as a persistent violent felony offender.

Petitioner does not assert a cognizable federal habeas claim: to the extent he "attacks [a] prior conviction as part of his sentencing proceedings, he can do so only if the prior conviction is constitutionally infirm under the standards of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 (1963)." United States v. Sharpley, 399 F.3d 123, 126 (2d Cir. 2005) (citing Custis v. United States, 511 U.S. 485, 491-92 (1994)). While petitioner's claim that he pled guilty in 1988 to first-degree robbery only because the trial judge and his trial counsel did not fully inform him of

---

[3] Second-degree burglary is a Class C felony. See N.Y. Penal Law § 140.25. Pursuant to § 70.08, the trial judge was required to sentence petitioner to an indeterminate prison term of eight years to life.

5

possible affirmative defenses might raise an ineffective assistance of counsel claim under Strickland, petitioner has not alleged, let alone "demonstrated[,] an actual deprivation of counsel as required by Gideon." Id. (noting that Gideon establishes that criminal defendants in state court have a right to counsel and distinguishing Gideon claims from claims of ineffective assistance of counsel under Strickland). Accordingly, petitioner is not entitled to habeas relief on this claim.[4]

*B. New York Criminal Procedure Law § 400.16(2)*

Petitioner next claims that his sentence must be vacated because the trial judge did not properly follow the statutory prerequisites of New York Criminal Procedure Law § 400.16(2) in sentencing him as a persistent violent felony offender. Because "[i]t is well settled that claims for violation of a state procedural law do not present a federal question for which habeas relief may be granted," petitioner is not entitled to habeas relief on this claim. Sims v. Ercole, 2010 WL 395993, at *1 (S.D.N.Y. Feb. 4, 2010) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); see also Boutte v. Poole, 2008 WL 3166696, at *1 (S.D.N.Y. Aug. 4, 2008) (citing Estelle).

*C. Double Jeopardy / Collateral Estoppel*

Petitioner next argues that because the prosecution did not move to correct a mistake made at the sentencing on his 1988 conviction for first-degree robbery, it was collaterally estopped from arguing at his instant sentencing that he was a persistent violent felony offender under § 70.80. Specifically, petitioner contends that although he should have been sentenced as a two-time violent felony offender in 1988 because of his 1981 and 1988 convictions for first-

---

[4] The Court notes that the Appellate Division rejected on the merits petitioner's claim that his plea was not made voluntarily and intelligently, concluding that "[c]onsidering all the circumstances surrounding the plea, we are satisfied from the minutes of the 1988 plea that the defendant understood the charges against him and made a voluntary and intelligent plea."

6

degree robbery, the sentencing judge mistakenly sentenced him as only a second felony offender, and it was therefore improper to "utilize[e] such sentence as a predicate violent felony [offense], where the[] [prosecution] had the full and fair opportunity to challenge the sentence as invalid." (Petitioner's Br. at 33.) He also argues that because of the sentencing mistake the trial judge was barred by the Double Jeopardy Clause of the Fifth Amendment from sentencing him as a persistent violent felony offender.

Petitioner's emphasis on the mistake made at the sentencing on his 1988 conviction is misplaced. Petitioner concedes that as a result of his guilty pleas in 1981 and 1988 to first-degree robbery charges he was a two-time violent felony offender. See Petitioner's Br. at 32 ("First, [the trial judge] failed to realize that petitioner was not a second felony offender, but instead was actually a second violent offender"). Because there is no dispute that petitioner had two prior violent felony convictions at the time of his instant sentencing, he was properly sentenced as a persistent violent felony offender, see New York Penal Law § 70.08 (trial court is mandated to sentence a defendant as a persistent violent felony offender if at the time of sentencing the defendant has, among other things, been "subjected to two or more predicate violent felony convictions") (emphasis supplied), and no collateral estoppel issue arises, see People v. Carr, 244 A.D.2d 264 (1st Dept. 1997) (the fact that defendant was not sentenced on his second violent felony conviction did not prevent trial judge from sentencing defendant as a persistent violent felony offender under § 70.08). Nor is the Double Jeopardy Clause implicated by petitioner's enhanced sentence. See United States v. Leo, --- F. Supp. 2d ----, 2010 WL 1539752, at *7 n.6 (S.D.N.Y. Apr. 16, 2010) ("Witte also makes clear that enhancing Leo's offense level based on the prior conviction does not raise double jeopardy concerns.") (quoting Witte v. United States, 515 U.S. 389, 399 (1995) ("[U]se of evidence of related criminal conduct

7

to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause.").

D. *Apprendi*

Finally, petitioner argues that the trial judge's enhancement of his sentence denied him a right to jury trial under Apprendi v. New Jersey, 530 U.S. 466 (2000). The Appellate Division rejected this argument on the merits, finding that the "mandatory sentence enhancement provisions of Penal Law § 70.08 do not violate either the Federal or the State Constitution."

Because Apprendi "expressly requires submission to a jury of any fact that permits an increase in the maximum penalty for a crime '*other than the fact of a prior conviction*,'" Boutte, 2008 WL 3166696, at *3 (citing Apprendi, 530 U.S. at 490) (emphasis in Boutte), no Apprendi violation occurs where, as here, a defendant receives an enhanced sentence under § 70.08 based solely on the fact that he has two prior violent felony convictions. See id. ("district courts in this circuit have routinely rejected . . . challenges to § 70.08 based on Apprendi") (quoting Francischelli v. Potter, 2007 WL 776760, at *9 (E.D.N.Y. Mar. 12, 2007) (collecting cases); see also United States v. Anglin, 284 F.3d 407, 411 (2d Cir. 2002) (enhanced sentence pursuant to 18 U.S.C. § 924(c)(1) based on prior felony conviction did not violate Apprendi).[5]

---

[5] The Second Circuit's recent decision in Besser v. Walsh, 601 F.3d 163 (2d Cir. 2010), which held that New York Penal Law § 70.10 violates Apprendi because it permits a trial judge to enhance a sentence above the statutory maximum based on the defendant's history and character and nature and circumstances of his criminal conduct, does not alter the Court's conclusion. The Besser panel noted that its decision did not address § 70.08, and that, in any event, § 70.08, unlike § 70.10, "requires imposition of an indeterminate sentence with a statutory maximum of life imprisonment *solely upon the court's finding of prior felony convictions.*" See Antinuche v. Zon, 2010 WL 2035795, at *11 n.6 (E.D.N.Y. May 20, 2010) (quoting Besser, 601 F.3d at 170 n. 5 (emphasis added in Antinuche)).

In an attempt to get around Apprendi's express carve-out for prior convictions, petitioner argues that because he challenged the voluntariness of his 1988 guilty plea at the time of his instant sentencing, the trial judge necessarily had to make factual findings "other than the fact of a prior conviction" before he could impose an enhanced sentence under § 70.08. Petitioner's argument is not persuasive. In United States v. Santiago, the Second Circuit held that no Apprendi violation occurred when a trial judge imposed an enhanced prison sentence pursuant to 18 U.S.C. § 924(e) after determining that the defendant's prior convictions arose from offenses "committed on occasions different from one another." 268 F.3d 151, 155-56 (2d Cir. 2001). The Circuit rejected the defendant's argument that "even if Apprendi permits judges to determine the *fact* of prior convictions, it reserves the 'different occasions' issue for a jury," reasoning that "[t]he determination of 'the fact of a prior conviction' implicitly entails many subsidiary findings" and that "Apprendi [leaves] to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well." Id. at 156-57 (emphasis in Santiago).

The Court concludes that there is no appreciable difference for Apprendi purposes between a trial judge's determination at sentencing that a defendant's prior convictions arose from offenses committed on different occasions and a trial judge's determination that a defendant's prior plea allocution was voluntarily and intelligently made. Accordingly, the Appellate Division's conclusion was not contrary to or an unreasonable application of Apprendi or its progeny.

III.   Ineffective Assistance of Counsel

Petitioner argues that he is entitled to habeas relief because his trial counsel was ineffective by not objecting to the admission at trial of (i) James Sannino's testimony and (ii) the

9

Weistreichs' physical property that petitioner stole from their home and dropped from their pillowcase as he fled. The Appellate Division rejected these arguments, finding that a "defendant is not denied effective assistance of trial counsel merely because counsel does not make a motion or argument that has little or no chance of success. Viewing the record as a whole, the defendant received the effective assistance of counsel." The Court finds that the Appellate Division's conclusions were not unreasonable.

*A. New York Criminal Procedure Law § 710.30*

Petitioner argues that his counsel erred in not objecting to the admission of James Sannino's testimony in light of the prosecution's failure to give the purported required notice of Sannino's testimony under New York Criminal Procedure Law § 710.30. Petitioner's argument is unavailing.

Section 710.30 provides that:

> Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, or (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

It is well established that § 710.30's notice requirement came about as a "legislative response to the problem of suggestive and misleading pretrial identification procedures" "typically involving the use of lineups, showups or photographs" that resulted in tainted in-court identifications of defendants. People v. Gissendanner, 48 N.Y.2d 543, 552 (1979). Because Sannino was not asked to identify petitioner in a pre-trial identification procedure arranged by the police, there was no possibility of a suggestive and misleading pretrial identification procedure, and notice of Sannino's testimony was not required under § 710.30. Petitioner cannot

10

establish that he was prejudiced by counsel's failure to object the admission of Sannino's testimony and the Appellate Division's rejection of his ineffective assistance claim was not contrary to or an unreasonable application of Strickland. See e.g., Lopez v. Greiner, 323 F. Supp. 2d 456, 479 (S.D.N.Y. 2004) ("It remains [petitioner's] burden . . . to establish prejudice under Strickland. To do that, he must demonstrate that a suppression motion would have succeeded. Otherwise, trial counsel's failure to make that motion did not prejudice him.").

*B. Chain of Custody*

Similarly unavailing is petitioner's argument that trial counsel was ineffective because he did not object to the admission of the Weistreichs' property that petitioner stole and dropped while he was fleeing the Weistreichs' home. Petitioner's argument rests on his erroneous belief that the evidence should not have been admitted because of a purported defect in its chain of custody. However, any objection to the admissibility of the property because of a purported defect in its chain of custody would have been futile as it is well established that "[d]eficiencies in the chain of custody [of evidence] only affect the weight of the evidence, not its admissibility." Patterson v. Pool, 2004 WL 1874967, at *10 (S.D.N.Y. Aug. 18, 2004) (citing United States v. Jackson, 345 F.3d 59, 65 (2d Cir. 2003)). Accordingly, the Appellate Division's rejection of this branch of petitioner's ineffective assistance claim was not contrary to or an unreasonable application of Strickland.

## CONCLUSION

For the reasons stated above, the application for a writ of habeas corpus is denied, and the petition is dismissed. A certificate of appealability will not issue. In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
August 12, 2010

                                  s/ Judge Raymond J. Dearie

                                  RAYMOND J. DEARIE
                                  United States District Judge